UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY L. BALDWIN<br>3020 Gainesville Street, S.E.<br>Apartment A482<br>Washington, D.C. 20020<br><br>Plaintiff,<br><br>v.<br><br>NAYLOR GARDENS COOPERATIVE<br>HOUSING ASSOCIATION<br>2725 30th St SE<br>Washington, DC 20020<br><br>and<br><br>GATES HUDSON & ASSOCIATES, Inc.<br>3020 Hamaker Court, Suite 301<br>Fairfax, VA 22031<br><br>Serve:<br>Patricia J M Blackburn<br>Gates, Hudson & Associates, Inc.<br>3020 Hamaker Court, Suite 301<br>Fairfax, VA 22031<br><br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### INTRODUCTION

1.  Plaintiff GREGORY L. BALDWIN ("Baldwin" or "the Plaintiff"), through undersigned counsel, hereby files this Complaint against NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION ("Naylor Gardens") and GATES HUDSON & ASSOCIATES, INC. ("Gates Hudson"), (collectively

referred to as "the Defendants"), pursuant to the Civil Rights Act of 1866 (42 U.S.C. §§ 1981 and 1982), as amended ("Section 1981" and "Section 1982").

2. This case is about the failure by a Housing Cooperative and an apartment management company, to provide Plaintiff with the peaceful enjoyment of his rented Apartment, on the same terms as were provided to non-African American residents. Plaintiff was the victim of unrelenting and pervasive racially motivated harassment and intimidation directed at him by another resident at the apartment complex. Plaintiff repeatedly complained to Defendants, who refused to take meaningful corrective action to stop and prevent the harassment.

3. Amid this environment of racial harassment, Plaintiff sought to maintain his dignity and to seek redress from the Defendants, only to be treated differently and less favorably when a complaint was leveled against him.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

5. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a) (4) because this action seeks damages and equitable relief under an act of Congress providing for the protection of civil rights.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the events and omissions giving rise to the claims occurred in the District of Columbia.

## PARTIES

7. Plaintiff Baldwin is a 43-year old African-American male. He is a United States citizen and a resident of the District of Columbia. Since 1999, Baldwin has had a lease agreement and has resided at the Naylor Garden Apartment complex, in Unit A482, located at 3020 Gainesville Street, S.E., Washington, D.C. 20020.

8. On information and belief, Naylor Gardens is a Cooperative Housing Association chartered by the District of Columbia. Naylor Gardens conducts business and enters into leases for apartment units in the District of Columbia.

9. Gates Hudson is a Virginia corporation specializing in management of office, industrial buildings, shopping centers and multi-family apartment properties in the Virginia, Maryland and Washington, DC markets. Gates Hudson is the Rental and Management Agent for the owners of Naylor Gardens.

## FACTUAL ALLEGATIONS

10. Beginning in the summer of 2004, and continuing thereafter, Plaintiff Baldwin began to suffer harassment because of his race by one of the other Naylor Garden tenants, Ms. Karen Imihoff, a white woman, who lived in Apartment B 484, directly above Plaintiff's apartment.

11. Ms. Imihoff frequently sat at her window and made racially charged remarks to Baldwin, his young son and son's mother, as they entered and exited from the building.

3

12. Prior to the incidents described in this Complaint, Plaintiff never met Ms. Imihoff, had had no contact with her, and at the time did not know her name, or anything about her.

13. Ms. Imihoff called the Baldwin family "Black Bitches," "Nigger," "Black Nigger" and other derogatory, insulting and demeaning names.

14. Additionally, Ms. Imihoff would create loud and disturbing noises by stomping on the floor (Baldwin's ceiling) and banging objects in her apartment with the purpose and effect of harassing and disturbing Baldwin in the peaceful occupancy of his apartment.

### The November 27, 2004 Incident

15. On Saturday November 27, 2004, the harassment escalated. On this occasion, Imihoff came to Baldwin's apartment and began pounding on his door. Imihoff began yelling hateful remarks, calling Baldwin and his family "nigger," "black bitches, "black nigger" and other similar racially disparaging terms.

16. When Baldwin opened the door, he observed that Ms. Imihoff had her hand behind her back and he feared that she might have a weapon.

17. Ms. Imihoff continued cursing and uttering abusive language directed at Baldwin and his family, terrorizing Baldwin's young son, and eventually displaying a crucifix that she had ripped from Baldwin's door and then broke in half. Despite Baldwin's request, Imihoff refused to return the crucifix yelling that she wouldn't give Baldwin "shit."

18. Baldwin, fearing for himself and his family, immediately went to find the Naylor Garden security guards who regularly patrolled the Apartment complex. He reported the incident to the security guards, who then located Ms. Imihoff, who admitted what had transpired and repeated "I can't stand the nigger."

19. At the Naylor Garden security guards' suggestion, Baldwin called the D.C. Metropolitan Police. As Baldwin and the security guards waited for the police to arrive, Imihoff leaned out of her window and again began yelling, "Fuck you, you nigger, I can't stand you."

20. The following business day, November 29, 2004, Baldwin reported the disturbing incident of November 27, 2004, to Ms. Rose Stover, the Gates Hudson Property Manager whose office is located at the Naylor Garden complex.

21. Baldwin requested the name of the tenant in Apartment B 484 (Ms. Karen Imihoff) so that he could seek a judicial restraining order to prevent further harassment. Ms. Stover refused to provide any information about the tenant to Baldwin.

## The Temporary Restraining Order and Defendants' Failure to Act

22. Thereafter, Baldwin discovered Ms. Imihoff's name from the mailbox. Baldwin then filed a complaint against Ms. Imihoff in the D.C. Superior Court and on December 7, 2004, obtained a Temporary Restraining Order ("TRO"), a copy of which he provided to the Naylor Garden Management Office.

23. Despite receiving a copy of the TRO and, presumably, the report from its own security guards, Defendants did nothing to prevent a continuation of the hostile and threatening environment.

24. Ms. Imihoff continued to harass and disturb Baldwin over the next *7 months*. Despite the frequent and acknowledged harassment by Ms. Imihoff, Naylor Gardens Apartments' management asked Baldwin, not Imihoff, to move.

25. In May 2005, frustrated with the apartment management's inaction, Baldwin contacted Ms. Stover's supervisor, Alice Mason, and again reported Imihoff's discriminatory and harassing behavior. Baldwin also complained to Ms. Mason about the apartment management's failure to address the harassment.

26. In a meeting with Ms. Mason, Ms. Stover and others, Baldwin asked Ms. Stover if she ever talked to Imihoff about the harassing conduct. Ms. Stover acknowledged that she had not talked to Imihoff.

27. Ms. Mason suggested that it might be a good idea to have a meeting with Baldwin and Imihoff. Ms. Stover rejected this idea.

28. In July 2005, the Defendants, having been advised of a disturbance at Plaintiff Baldwin's apartment caused by a third party, posted a notice on Baldwin's apartment door, advising Baldwin that he was in violation of his lease because of "excessive noise, inappropriate and/or illegal behavior" and that he would be evicted if the violation were not corrected within 30 days.

29. On information and belief, despite Plaintiff Baldwin's repeated complaints regarding Ms. Imihoff's harassing, illegal and discriminatory

behavior, the Defendants never caused a notice to be posted on Ms. Imihoff's door, similar to the one described in paragraph 28 above, or otherwise threatened her with eviction.

30. From at least November 2004 through the summer of 2005, Defendants ignored entirely Plaintiff's continual requests that some action be taken against Ms. Imihoff to stop the harassment. In the summer of 2005, Ms. Imihoff moved out of her apartment.

## COUNT ONE

### Civil Rights Act of 1866
### Section 1981 Claim

### (Interference with Right to Contract)

31. Baldwin incorporates allegations 1 through 30 above as though fully set forth herein.

32. Plaintiff Baldwin is African-American and a member of a protected class. He had a contract to lease real property at Naylor Gardens.

33. Defendants violated Plaintiff Baldwin's civil rights under Section 1981 because they interfered with his right to make and enforce a contract, i.e. his lease, and denied him the right to the equal enjoyment of the benefits, privileges, terms and conditions of the contractual relationship, as is enjoyed by white citizens. Defendants permitted, and did nothing to stop, the discriminatory harassment described above, including but not limited to Ms. Imihoff's racially charged epitaphs and other offensive and demeaning remarks and harassing acts based on Baldwin's race, despite Plaintiff Baldwin's repeated pleas for assistance and demands that Defendants' stop the harassment.

34. Defendants knew that Ms. Imihoff was harassing Plaintiff Baldwin by subjecting him, and his family, to unwelcome racial slurs and other racially offensive and demeaning remarks and harassing behavior while he was attempting to enjoy the benefits, privileges and terms of his lease, on the same basis as white tenants.

35. Defendants' failure to take corrective measures to stop the racial harassment to which Plaintiff Baldwin was being subjected violated Plaintiff's right to make and enforce contracts and to enjoy the benefits, privileges and terms of a contract, on the same terms as white citizens.

36. Defendants further treated Plaintiff discriminatorily, in violation of Section 1981, when it threatened Baldwin with eviction in July 2005, while not taking similar action toward Ms. Imihoff, or other white citizens.

37. Defendants' discrimination against Plaintiff Baldwin was intentional and based on race. Defendants acted with malice or reckless disregard of Baldwin's rights.

38. Defendants' actions and reckless indifference have deprived Baldwin of the enjoyment of the benefits, privileges, terms and conditions of his contractual relationship with Defendants.

39. Baldwin has suffered, and will continue to suffer, severe and substantial damages as a direct and proximate result of Defendants' failure to act and discriminatory actions, including severe emotional pain and distress, mental anguish, humiliation and embarrassment.

40. Defendants' actions and reckless indifference have interfered with and deprived Baldwin of the right to contract for the lease of real property on the same terms as other citizens in violation of 42 U.S.C. § 1981.

## COUNT TWO

### Civil Rights Act of 1866
### Section 1982 Claim

### (Interference with the Right to Lease and Hold Real Property)

41. Baldwin incorporates allegations 1 through 30 above as though fully set forth herein.

42. Plaintiff Baldwin is African-American and a member of a protected class.

43. Defendants violated Plaintiff Baldwin's civil rights under Section 1982 because they denied Plaintiff the same right as is enjoyed by white citizens to lease and hold real property. The discriminatory harassment described above, including but not limited to Ms. Imihoff's racially charged epitaphs and other offensive and demeaning remarks and harassing behavior based on Baldwin's race was permitted to continue and exist despite Plaintiff Baldwin's repeated pleas for assistance and demands that Defendant stop the harassment.

44. Defendants knew that Ms. Imihoff was harassing Plaintiff Baldwin by subjecting him, and his family, to unwelcome racial slurs and other racially offensive and demeaning remarks and harassing behavior while he was attempting to enjoy his lease, on the same basis as white tenants.

45. Defendants' failure to take corrective measures to stop the racial harassment to which Plaintiff Baldwin was being subjected violated Plaintiff's right to lease and hold real property on the same terms as white citizens.

46. Defendants treated Plaintiff discriminatorily, in violation of Section 1982, when it threatened Baldwin with eviction in July 2005.

47. Defendants' discrimination against Plaintiff Baldwin was intentional and based on race. Defendants acted with malice or reckless disregard to Baldwin's rights.

48. Defendants' actions and reckless indifference have deprived Baldwin of the enjoyment of the benefits, privileges, terms and conditions of his leased real property.

49. Baldwin has suffered, and will continue to suffer, severe and substantial damages as a direct and proximate result of Defendants' failure to act and discriminatory actions, including severe emotional pain and distress, mental anguish, humiliation and embarrassment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gregory L. Baldwin respectfully requests that the Court enter a judgment:

    A. Declaring that the acts and omissions complained of herein are in violation of the Civil Rights Act 0f 1866, 42 U.S.C.§ §1981 and 1982;

    B. Enjoining and permanently restraining Defendants from violating Section 1981 and 1982, 42 U.S.C.§ § 1981 and 1982;

C. Awarding compensatory damages to Plaintiff in an amount to be determined after trial;

D. Awarding punitive damages to Plaintiff for Defendants' reckless disregard of Plaintiff's rights in an amount appropriate to the proof at trial;

E. Directing Defendants to pay, pursuant to 42 U.S.C. §1988, Plaintiff's costs, reasonable attorneys fees and expenses associated with this action; and

F. Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

_____
Charles R. Both
DC Bar No. 42424
Law Offices of Charles R. Both
1666 Connecticut Avenue, NW
Suite 500
Washington, DC 20009

Isabelle Thabault
DC Bar No. 318931
Robert Bruskin
DC Bar No. 164293
Washington Lawyers Committee for
Civil Rights and Urban Affairs
11 DuPont Cycle NW
Suite 400
Washington, DC 20036

Attorneys for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY JURY**

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
GREGORY L. BALDWIN

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __D.C.__
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Charles R. Both
1666 Connecticut Avenue, NW Suite 500
Washington, DC 20009

## DEFENDANTS
NAYLOR GARDENS COOPERATIVE HOUSING ASS
GATES HUDSON & ASSOCIATES, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT O
LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DF |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraini Order/Preliminary Injunction**
Any nature of suit from any category n be selected for this category of case assignment.

*(If Antitrust, then A governs)*

● **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justic
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊗ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge C* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights A( |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Jud from Mag. J

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Civil Rights Act 1866; 42 U.S.C. ss 1981 & 1982

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in c
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE November 26, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk o Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Se II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found und the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerl Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.